UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

Charles P. Guarino, Of Counsel
Nicoll, Davis & Spinella LLP
95 Route 17 South, Suite 203
Paramus, New Jersey 07652
(201) 712-1616
Attorneys for Plaintiff

| | |
|---|---|
| OA INTERNET SERVICES, LTD., | |
| Plaintiff, | Hon. |
| vs. | Civil Action No. 08-9 (JLL) |
| DEAN SPINAGOTTI & SCOT FAMOUS, individually and d/b/a ESSENTIAL BODY CARE, | Civil Action |
| -and- | FIRST AMENDED COMPLAINT AND JURY DEMAND |
| JOHN DOES 1-20, JANE DOES 1-20, and ABC CORPORATIONS 1-20, | |
| Defendants. | |

Plaintiff, OA Internet Services, Ltd. ("OA Internet" or "Plaintiff"), by its attorneys, complaining of the named Defendants identified herein, for its complaint alleges as follows:

**JURISDICTION AND VENUE**

1.     This is a civil action for false advertising, false designation of origin, unfair competition, product and business disparagement, arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051-1127 and the common and statutory laws of the State of New Jersey.

2.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1338 and 15 U.S.C. §1121 as well as and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## THE PARTIES

3.     Plaintiff OA Internet is a corporation organized and existing under the laws of Canada, with its principal place of business at 5764 Monkland Ave., Suite 555, Montreal, Quebec, H4A 1E9.  See Declaration of Octav Moise, attached hereto as **Exhibit A**.

4.     On information and belief, Defendant Dean Spinagotti ("Spinagotti") is an individual located at 10 Murphy Court, Totowa, New Jersey 07512.

5.     On information and belief, Defendant Scot Famous ("Famous") is an individual located at 754 Maple Avenue, Brick, New Jersey 08724.

6.     On information and belief, Essential Body Care is an unincorporated business entity owned, controlled, and/or operated by Famous and Spinagotti.

7.     Defendants John Does 1-20, Jane Does 1-20 and ABC Corporations 1-20 are fictitious names for parties whose identities are presently still unknown to Plaintiff whom, upon information and belief, are agents, successors, and/or assigns of Defendants with respect to the operation, ownership, and/or control of Essential Body Care.

## PLAINTIFF'S HISTORY

8.     OA Internet is a manufacturer, distributor, and seller of an array of natural enhancement and dietary supplement products, including the well-known VIMAX male enhancement supplement product.

9.     OA Internet's reputation has been and continues to be enviable both in the trade and to the general consuming public.  OA Internet is well known to users of natural enhancement products, as well as to retailers and distributors in this industry.  OA Internet's product line includes products that use unique and distinctive logos, labeling, bottling, and capsule combinations.

10.    Among the products it created, manufactures and sells, OA Internet has continuously marketed a natural male enhancement supplement under the inherently distinctive mark VIMAX

since February 12, 2002.

11. OA Internet obtained a registration for the mark "VIMAX" on the Principal Register of the United States Patent and Trademark Office, as U.S. Trademark Registration No. 3,307,253 (attached as **Exhibit B** is a true copy of the USPTO registration record). The Registration is valid, subsisting, and in full force and effect.

12. Since its introduction, the VIMAX mark has been prominently displayed on Plaintiff's products, packaging, promotional material, and advertisements. OA Internet has also packaged its VIMAX product with an inherently distinctive trade dress, including its label design, white bottle, and distinctive tan capsule.

13. The VIMAX mark and associated trade dress distinguishes OA Internet as the source of these products.

## DEFENDANTS' INFRINGING ACTIVITIES

14. OA Internet sells its natural enhancement and dietary supplement products through select distributors throughout the United States and Canada. These distributors are chosen for their ability to market our products in a responsible, professional manner that places the products and OA Internet in the best possible light.

15. OA Internet carefully and continuously monitors its chosen distributors for compliance with its high standards, and acts swiftly to address deficiencies in distributor practices as they arise; such actions have included termination of the distributor relationship at OA Internet's sole discretion.

16. Defendants Spinagotti and Famous are former authorized distributors of OA Internet products, including its popular VIMAX natural male enhancement supplement, whose authorization to sell OA Internet products was terminated in December 2006.

17.     Defendants Spinagotti and Famous operate an Amazon.com Marketplace website under the name "Essential Body Care," at which they have continually offered OA Internet's VIMAX for sale.  Amazon.com Marketplace is a service of Amazon.com that allows third-party sellers to operate virtual storefronts within Amazon.com's website.  Defendant's Essential Body Care storefront is located at *http://www.amazon.com/gp/help/seller/at-a-glance.html?ie=UTF8&seller=A2ZAR327W6S7NM*.

18.     Despite OA Internet's unequivocal refusal to retain Defendants as authorized distributors of its products, Defendants sought to surreptitiously acquire OA Internet products for resale on their Essential Body Care website, specifically its VIMAX natural male enhancement supplement.  To accomplish this, Defendants created a false identity, which they then used to deceive OA Internet into treating them as a new distributor of Plaintiff's products and allowing them to place orders for Plaintiff's VIMAX product.

19.     Defendants were initially able to use their false identity to successfully dupe OA Internet into selling them its VIMAX product.  In October 2007, however, OA Internet discovered a second attempt by Defendants at purchasing VIMAX through deception, and acted swiftly to cancel the order.

20.     After negotiation between the parties, Defendant Spinagotti signed a written Non-Competition and Non-Solicitation Agreement dated October 11, 2007 (the "Agreement"), in which he agreed not to purchase, distribute, or market OA Internet products, assist others in such activities, or disclose any information regarding OA Internet, for a period of ten years.  A true copy of the Agreement is attached hereto as **Exhibit C**.  At this point in time, Plaintiff was still unaware of Defendant Famous' role in the attempted purchase of VIMAX product and the operation of the Essential Body Care storefront; therefore, no attempt was made to bind Famous to this Agreement.

21.     Despite the clear prohibitions set forth in the Agreement that Defendant Spinagotti had just entered into, the Defendants made renewed attempts to acquire VIMAX and offer it for resale through their Essential Body Care website on Amazon.com Marketplace, through deception directed towards authorized VIMAX distributors.  Upon OA Internet's discovery of Defendant Spinagotti's potential breach of the Agreement, an investigation was commenced.

22.     Despite the clear prohibitions within the Agreement, the Defendants' Essential Body Care website on Amazon.com Marketplace continued to maintain several listings, including descriptions and photos, offering VIMAX product for sale.

23.     OA Internet made several written requests to Defendant Spinagotti to remove these VIMAX listings from his Essential Body Care website.  Spinagotti refused to comply with these requests.

24.     As part of its investigation, OA Internet asked a third party, Christopher Youngs, to attempt to purchase VIMAX from Defendants by placing an order at their Essential Body Care website.  See the Declaration of Chris Youngs attached hereto as **Exhibit D**.

25.     Youngs placed an order for VIMAX capsules at the Essential Body Care website on October 25, 2007.  When he had not received the ordered VIMAX product by November 8, 2007, he sent an inquiry through Amazon.com Marketplace to Essential Body Care, requesting information on the status of the order.

26.     Essential Body Care responded by email to Youngs that his order could not be shipped, since VIMAX "was being investigated by the FDA," and suggested that he "check out the Vicerex as a replacement." A true copy of the Essential Body Care email to Youngs is attached hereto as **Exhibit E**.

27.     Upon information and belief, Vicerex is a natural enhancement product offered by an OA Internet competitor.

28.     Despite the spurious assertions in its email to Youngs, Essential Body Care continued to offer VIMAX on its Amazon.com Marketplace website, and continued to do so for months after, claiming that the item was "in stock" for shipment as late as January 2, 2008.  See the Essential Body Care website printout attached hereto as **Exhibit F**.

29.     Defendants' ongoing actions are a transparent attempt to alienate potential VIMAX customers by appearing to offer VIMAX for sale, accepting orders for VIMAX that Defendant had no means or intention to ever fulfill, then disparaging the VIMAX product while simultaneously trading on the VIMAX mark to steer customers to a competing product.

30.     Defendants' actions constitute an impermissible use of OA Internet's registered VIMAX trademark, as well as breach of the Agreement.

31.     OA Internet has been and continues to be injured by Defendants' unlawful acts.

32.     Upon information and belief, Defendants have performed the acts complained of herein willfully and with knowledge of the infringement that they would cause, and with intent to mistake or deception, and to appropriate and unfairly trade upon OA Internet's goodwill in its registered VIMAX trademark.

33.     As a proximate result of the acts of Defendants as alleged herein, OA Internet has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

34.     Plaintiff has no adequate remedy at law.  Plaintiff will continue to suffer irreparable harm unless Defendants are preliminarily and permanently enjoined by this Court.

## COUNT I

### BREACH OF AGREEMENT

35.     OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 33 of this Complaint as if fully set forth again herein.

36. Defendant Spinagotti voluntarily entered into a contractual agreement with Plaintiff that, *inter alia*, prohibited him from, directly or indirectly, selling, purchasing, or marketing Plaintiff's products, or doing business with or disclosing information concerning Plaintiff and its products for a period of ten years.

37. Defendant's actions constitute a breach of this written agreement, causing damages to OA Internet based upon Defendant's unfulfilled promises.

38. Plaintiff is entitled to compensatory damages due to Defendant's breach of the written agreement.

39. Defendant was aware that if he did not adhere to the terms of the agreement, it was within the parties' expectation that his actions could result in the loss of future revenue to Plaintiff.

40. For the foregoing reasons, Plaintiff requests that in addition to restitution and compensatory damages, an award of consequential damages be granted due to Defendant's deficient performance of the written agreement.

## COUNT II

### FALSE DESIGNATION OF ORIGIN OF PRODUCTS, FALSE ADVERTISING AND FALSE DESCRIPTION AND REPRESENTATION

41. OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 39 of this Complaint as if fully set forth again herein.

42. This cause of action arises under Section 43(a) of the Trademark Act of 1946 as amended (15 U.S.C. § 1125(a)) for false designation of the origin of products, false description and representation, and false advertising (15 U.S.C. § 1125(c)).

43. By reason of the foregoing acts, Defendants have falsely designated the origin of the products they are marketing and have otherwise made false descriptions and representations about such products. Defendants' activities are likely to create confusion among the purchasing public, are likely to deceive purchasers concerning the source or sponsorship of such products, and will otherwise mislead purchasers as to the origin of the products sold by or on behalf of Defendants.

44.     Defendants' misleading use of OA Internet's trademarks constitutes false advertising, false designation of origin, and false description and representation in and affecting interstate commerce.

## COUNT III

## COMMON LAW OF UNFAIR COMPETITION

45.     OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 43 of this Complaint as if fully set forth again herein.

46.     This cause of action arises under the common law of unfair competition.

47.     Defendants, by reason of the foregoing acts, have traded upon and appropriated the reputation and valuable goodwill of OA Internet and has acted to create the likelihood of confusion and mistake on the part of the purchasing public as to the Plaintiff's products.  In general, Defendants' acts are likely to mislead the public, and constitute unfair competition and a misappropriation and infringement of OA Internet's common law trademark rights.

## COUNT IV

## TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

48.     OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 46 of this Complaint as if fully set forth again herein.

49.     This cause of action arises under the laws of the State of New Jersey.

50.     Defendants, by reason of the foregoing acts, have injured OA Internet's business reputation and diluted the distinctive quality of its marks under the common and statutory laws of the State of New Jersey.

## COUNT V

## UNFAIR COMPETITION UNDER N.J.S.A. 56:4-1

51.     OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth again herein.

52. This count arises under N.J.S.A. 56:4-1, a statute of the State of New Jersey.

53. Defendants, by reason of the foregoing wrongful acts, have engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of their trade, which acts and practices have injured OA Internet within the meaning, and in violation of the statutes of the State of New Jersey.

## COUNT VI

## DEFAMATION

54. OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 52 of this Complaint as if fully set forth again herein.

55. Defendants have made false and defamatory statements regarding Plaintiff's business that are injurious to the reputation and livelihood of OA Internet.

56. Among such statements was the false and defamatory statement by email to a potential Vimax customer that OA Internet was under investigation by the U.S. Food and Drug Administration.

57. Upon information and belief, Defendants' statements has been disseminated via the internet to other members of the public interested in purchasing Plaintiff's products.

58. Defendants have published his false and defamatory statements regarding OA Internet with knowledge that such statements were false.

## COUNT VII

## BUSINESS AND PRODUCT DISPARAGEMENT

59. OA Internet repeats and realleges each and every allegation contained in Paragraphs 1 through 57 of this Complaint as if fully set forth again herein.

60. Defendants have made numerous statements that are disparaging to the quality of OA Internet's business and products.

61. Defendants' false and disparaging statements were made knowingly and recklessly by

Defendant, in an effort to interfere with Plaintiff's relationship with its customers and to prevent customers from buying Plaintiff's products.

## ALLEGATION OF DAMAGE

OA Internet has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendants' aforesaid activities. Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to OA Internet's irreparable damage. OA Internet's remedy at law is not adequate to compensate it for the injuries suffered and threatened. By reason of Defendants' acts complained of herein, OA Internet has suffered monetary damages in an amount not yet determined.

**WHEREFORE**, OA Internet demands:

1. That the Court order Amazon.com and/or Amazon.com Marketplace to remove all webpages, links, and references to OA Internet's VIMAX product and trademark associated in any manner with Defendants and their agents, successors, and/or assigns, including but not limited to those located on the Essential Body Care storefront website.

2. That Defendants, their agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained during the pendency of this action, and permanently thereafter, from (a) using OA Internet's marks or any colorable imitation thereof; (b) advertising, distributing, offering for sale or selling any goods or services using OA Internet's marks or any variations thereof; (c) using, in connection with the advertising, offering for sale or sale of any products, any false designation, description or representation stating or implying that OA Internet or its products are being investigated by any governmental agency; (d) otherwise infringing upon or diluting OA Internet's marks or competing unfairly with OA Internet or injuring its business reputation.

3. That Defendants shall immediately notify in writing and direct all publications including internet websites, including but not limited to Amazon.com and Amazon Marketplace, and search engines in which any advertisements or other references to Defendant's business using OA Internet's marks are scheduled to appear, including keyword, sponsored links, or banner ads, to cancel all listings, advertisements, items, and references using OA Internet's marks;

4. That Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the Injunction and Order;

5. That Defendants be required to account for and pay over to OA Internet all damages sustained by OA Internet, the amount of which cannot be calculated at this time;

6. That Defendants be required to account for and pay over to OA Internet all profits realized by Defendants by reason of its unlawful acts alleged herein, and that such amounts be trebled, as provided by law;

7. That Defendants be required to pay OA Internet punitive damages as may be permitted by law or in the discretion of the Court;

8. That Defendants be required to post any Order of the Court on any website owned or operated by Defendants and give notice thereof to all their correspondents, customers, members and subscribers;

9. That OA Internet have such other and further relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services provided by or promoted by Defendants are authorized by OA Internet or related in any way to OA Internet or its products; and

10. That OA Internet be awarded the costs and disbursements of this action, together with all reasonable attorneys' fees and lawful interest; and

11. That OA Internet be awarded such other and further relief as the Court deems just

-12-

and proper.

## JURY DEMAND

Plaintiff requests trial by jury on all issues so triable.

>Nicoll, Davis & Spinella LLP
>Attorneys for Plaintiff, OA Internet, Inc.

Dated:  March 19, 2008               /s/ Charles P. Guarino
                                     CHARLES P. GUARINO